Dear Senator Hollis:
This is in response to your recent request for an opinion of this office concerning the State Mineral Board and whether, as a state agency, it is required to follow the provisions of the Louisiana Administrative Procedure Act, La. R.S. 49:950 etseq., (hereinafter LAPA) and regulations thereunder.
Particularly, you ask whether the notice provisions of the LAPA are required to be followed when the State Mineral Board is engaged in decision making regarding oil and gas leasing.
The LAPA first became effective in July, 1967 and the State Mineral Board, as well as certain other designated agencies, were exempt from its provisions.[1] The Act has been amended numerous times since its enactment, affecting most of its sections, and new sections have been added.
While the LAPA does not at this time apply to every administrative body in the State, the definition of "agency" was amended in 1974 to include many of the agencies originally excluded from the definition in the original act,[2]
including the State Mineral Board[3]. Presently, R.S.49:968 provides for a review of agency rules and specifically includes the Department of Natural Resources and all other agencies made a part of it, requiring each to submit a report relative to any proposed adoption, amendment, or repeal of a rule to the designated standing committees of the legislature. In this case, the House Committee on Natural Resources and the Senate Committee on Natural Resources are the designated Committees. See R.S. 49:968 (B)(11).
Following the passage of the Louisiana Constitution of 1974, the Legislature effected the reorganization of government under R.S. 36:1 et seq., specifically providing in R.S. 36:359 that the State Department of Conservation and the State Mineral Board would be transferred to and become a part of the Department of Natural Resources, as provided in R.S. 36:806 and R.S. 36:807, respectively.
Therefore, the State Mineral Board has become subject to the rule making and notice provisions of the LAPA. In this regard, it should be mentioned that there are two types of notice provisions. The first is of the type intended to give notice of intended actions, as found in R.S. 49:953, with respect to the proposed adoption, amendment or repeal of any rules; and, secondly, notice provisions dealing with an adjudication involving "parties", as provided in R.S. 49:955. The second type of notice involves evidentiary matters in which it is specifically provided that "notice may be taken of judicially cognizable facts". See R.S. 49:956. However, for these LAPA requirements to apply, there must be rule-making or adjudicatory activity.
With respect to the question of whether or not the State Mineral Board is subject to all notice provisions of the LAPA when engaged in decision making regarding oil and gas leasing, not all decision making requires notice to the public or to a person or entity not meeting the definition of "party" under R.S.49:951(4). This section defines a "party" as "each person or agency named or admitted as a party or properly seeking and entitled as of right to be admitted as a party" to a proceeding.
The courts have held that unless a statute or constitutional provision requires notice and a hearing, agency actions may not be "decisions" or "orders" governed by the LAPA, Ogburn v.City of Shreveport, 614 So.2d 748 (2nd Cir. 1993), writ denied 619 So.2d 547; nor does the LAPA apply to internal advisory bodies within a department and recommendations made to the head of the department which are not adjudications, E.Lionel Pavlo Engineering Co., v. State, Through Dept.of Transp. and Development, Office of Highways,521 So.2d 652 (1st. Cir. 1988), writ denied, 523 So.2d 234; nor to mere "rules" promulgated by an agency (DEQ), which are not a "final decision or order" and are exempt from the judicial review provisions of the LAPA, Louisiana Chemical Association v.Department of Environmental Quality, 577 So.2d 230
(1st Cir. 1991).
The LAPA does not create an independent right to hearing when an agency is engaged in decision-making, but merely sets forth the procedures to be used in the event that the agency is obligated to hold a hearing as may be required by the constitution or another statute. Blackett v. DEQ,506 So.2d 279 (La.App. 1st Cir. 1987).
Thus, in order to reach a proper analysis of whether certain decision making activity regarding oil and gas leasing might involve or implicate the LAPA, the exact nature and extent of the decision making must be identified.
In this regard, it should be noted that Louisiana Revised Statutes 30:125 et seq., provide detailed procedures for decision making activities involving oil and gas leasing matters, and notice of certain of those activities may or may not be required. Moreover, the Department of Natural Resources has promulgated and published detailed rules pertaining to mineral leasing policy which are contained in the Louisiana Administrative Code.[4]
See, for instance, Volume 17, Title 43, containing detailed provisions relating to Mineral Leasing Policy, at Page 107, and similar provisions dealing with geophysical and geological surveys, at Page 153.[5]
However, even the policies and provisions set forth in the Louisiana Administrative Code may be waived in whole or in part by the Secretary of Natural Resources if "for just cause shown he determines that the best interests of the state are served thereby". See LR 43:I.909.
At this point, it should be noted that rule-making and decision-making involve some complexity, depending on the exact subject matter of each, and the particular activity in question should be identified, as briefly referenced above. As discussed, rule-making requires notice whether for the purpose of adoption, amendment or repeal. See 49:953 et seq. However, rules which regulate only the internal management of the agency are excluded, and this may involve internal matters which do not directly involve the public, but which may affect decision making involving oil and gas leasing. Similarly, investigative and enforcement actions pertaining to existing leases are probably exempt from the notice provisions.
With respect to decision making involving the adoption of agency rules, the LAPA requires that notice be given at least twice. First, prior to the adoption of the rule, and second, once the rule has been adopted.[6]
With respect to adjudications and hearings, the LAPA also contains rules, other than those which relate to evidence, which govern these procedures. In an adjudication or hearing, all parties shall be afforded an opportunity for hearing after reasonable notice.[7] The provisions of R.S.49:955(B) include the following:
(1) A statement of the time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) A reference to the particular sessions of the statutes and rules involved; and
(4) A short and plain statement of the matters asserted.
With regard to the assessment of fees by the State Mineral Board in connection with the sale of in-kind royalties, the Legislature has specifically required that the adoption of rules be in accordance with the LAPA. See La. R.S. 30:142.
As you can see, there are numerous detailed provisions involved in decision-making matters regarding oil and gas leasing and, while the State Mineral Board is subject to the notice provisions of the LAPA, not every action, analysis or decision requires notice to the public at large. In order to further analyze a particular decision-making activity, we would need to know the exact type, nature and extent of the decision-making to which you make reference.
We hope this general information is of benefit to you and if we may be of further assistance, please call upon us at any time.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK:gbe
DATE REC'D: 7/19/95
DATE RELEASED:
[1] See Act No. 382, 1966 Regular Session, Section 1, paragraph (2)(C), excepting the State Mineral Board and other designated agencies.
[2] The 1974 Legislative Amendment was discussed by the Louisiana Supreme Court in Matter of Rollins EnvironmentalServices, Inc., 481 So.2d 112 (La. 1985), at page 118, where it stated, in part: "It is clear then that all Louisiana governmental entities which promulgate rules or make decisions under the Louisiana Constitution and statutes, are subject to the Administrative Procedure Act unless * * * they are expressly exempt * * * by statute. Furthermore, * * * La. R.S. 49:966(B) provides in pertinent part: No subsequent legislation shall be held to supersede or modify the provisions of this Chapter except to the extent that such legislation shall do soexpressly. (emphasis added)"
[3] The State Mineral Board was created by Act No. 93 of the 1936 Regular Session, and under its powers and duties outlined in La. R.S. 30:121, et seq., the board shall be "a body corporate with power to sue and be sued . . ." and "shall administer the state's proprietary interest in minerals as herein provided." As a proprietary agency, the State Mineral Board administers the leasing and development of minerals, oil and gas underlying state-owned and waterbottoms as a private landowner would on privately owned land. This is distinguishable from a state regulatory agency which regulates activity on all lands, both public and private. The designation as a proprietary state agency is crucially important to the ability of the Mineral Board to properly administer the development of the state's oil and gas reserves, and take appropriate action to protect the interests of the state.
[4] The Louisiana Administrative Code contains all effective rules adopted by an agency subject to the LAPA, and all boards, commissions, agencies and departments of the executive branch.
[5] Promulgated by the Department of Natural Resources, in accordance with R.S. 36:354(A), at various times as indicated therein.
[6] A condition precedent to the adoption, amendment, or repeal of a rule requires the agency to "give at least 15 days notice of its intended action". R.S. 49:953(A)(1).
[7] See Page 2, supra, for definition of a "party" under R.S.49:951(4).